**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

**UNITED STATES OF AMERICA**

      - against -

**KAM WONG,**

            **Defendant.**

------------------------------------------------

**18-cr-737 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

On November 2, 2023, the Court entered a Final Order of Garnishment in this case, ordering that 25% of the defendant's net monthly pension benefit disbursements be paid directly toward restitution. ECF No. 128. With respect to the remaining 75% of the defendant's net monthly pension benefit disbursements, the Government now moves for (1) the entry of a preliminary order of forfeiture as to substitute assets to include the balance of the defendant's net monthly pension benefit disbursements as a substitute asset, ECF No. 123, or, in the alternative, (2) modification of the restitution payment schedule due to a material change in the defendant's economic circumstances, ECF No. 120. The defendant opposes both motions. ECF No. 129. For the following reasons, the Government's motion for the entry of a preliminary order of forfeiture as to substitute assets is **denied**, and its motion for modification of the payment schedule is **granted.**


I.

The following are the facts most relevant to the disposition of the Government's motions.

From 2013 to January 2018, while employed as the Chief Executive Officer of the Municipal Credit Union ("MCU"), the defendant received MCU funds that he was not entitled to by requesting reimbursements for expenses not incurred and deceiving MCU employees concerning the terms of his employment contract. See Plea Tr. 21, ECF No. 19. On November 19, 2018, the defendant pleaded guilty to Count One of the Information (embezzlement from a credit union in violation of 18 U.S.C. §§ 657 and 2) pursuant to a plea agreement with the Government and admitted the forfeiture allegation with respect to Count One. See id. at 12, 25. On June 13, 2019, the Court sentenced the defendant principally to 66 months' imprisonment, followed by three years of supervised release. ECF No. 55. The defendant was released from prison on May 1, 2023 and is currently serving his three-year term of supervised release. See Gov't's Mot. for Modification of Payment Schedule ("Gov't's Modification Mot.") 2, ECF No. 122.

On December 6, 2018, the Court entered a Consent Preliminary Order of Forfeiture/Money Judgment, imposing a money judgment against the defendant in the amount of $9,890,375 (the "Money Judgment") representing proceeds traceable to the offense


2

alleged in Count One of the Information. ECF No. 18. In a Final Order of Forfeiture dated July 19, 2019, the Court ordered various assets of the defendant and the defendant's wife to be forfeited to the Government, ECF No. 67, save a remittal of $793,892 and the release of the marital home, valued at $475,000, to Mrs. Wong, ECF No. 58. To date, approximately $7,571,197.46 of the Money Judgment against the defendant remains unpaid. Declaration of Deputy United States Marshal John Calabria ("Calabria Decl.") ¶ 9, ECF No. 124. On June 27, 2019, an Order of Restitution was entered against the defendant in the amount of $9,890,375, requiring the defendant to turn over "at least 20% of [his] gross monthly income" to MCU throughout the "period [of his post-release] supervision." ECF No. 57. The defendant has made one voluntary payment of $5,358, which represents 20% of his first Social Security disbursement, toward restitution. Declaration of Melissa A. Childs ("Childs Decl.") ¶ 15, ECF No. 121. After interest, and credit for the forfeited funds restored to the victim, the outstanding restitution balance still owed to the defendant's victim is $8,593,604. Id. ¶ 17.

On March 31, 2023, upon learning that a compulsory distribution from the defendant's pension would become due on July 1, 2023, the Government sought, obtained, and served writs of garnishment on any property held by the defendant with

3

Municipal Credit Union Defined Benefit Plan and Trust. ECF Nos. 112-14. On June 23, 2023, the defendant filed a motion to quash the writs of garnishment. ECF No. 101. On November 2, 2023, the Court entered a Final Order of Garnishment, ordering that 25% of the defendant's net monthly pension benefit disbursements be paid directly toward restitution. ECF No. 128.[1]

The Government now declares that the United States has not been able to locate any further assets traceable to the proceeds of the defendant's offenses, despite the exercise of due diligence in investigating the assets of the defendant. See Calabria Decl. ¶ 13. The Government has, however, located:

> Any and all future monthly pension benefit disbursements made by the Municipal Credit Union Defined Benefit Plan and Trust, and Delaware Charter Guarantee and Trust Company, d/b/a Principal Trust . . . , Annuity Contract Number ending in -5063 to the [d]efendant that are otherwise not subject to a writ of garnishment, i.e. disbursements in excess of the 25% garnishment cap, up to the amount of the outstanding Money Judgment . . . .

Gov't's Forfeiture Mot. ¶ 9, ECF No. 123. The Government moves pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(p) for the entry of a preliminary order of forfeiture as to substitute assets to include the above-named property as a substitute asset, to be applied

---

[1] ERISA's anti-alienation provision was not at issue in the garnishment proceedings because "the [Mandatory Victims Restitution Act ("MVRA")] permits the Government to garnish [a defendant's] retirement funds to compensate the victims of his crimes, notwithstanding [ERISA's] anti-alienation provision." United States v. Shkreli, 47 F.4th 65, 68 (2d Cir. 2022), cert. denied sub nom. Greebel v. United States, 143 S. Ct. 2560 (2023).

4

towards the Money Judgment that was entered against the defendant. ECF No. 123. In the alternative, the Government seeks modification of the restitution payment schedule under 18 U.S.C. § 3664(k) to provide for an amount equal to the remaining 75% of the defendant's monthly pension plan disbursements after garnishment to be paid toward restitution, due to a material change in the defendant's economic circumstances that increases his ability to pay restitution. ECF No. 120.

## II. Motion for Forfeiture

### A. Standard of Review

Pursuant to 21 U.S.C. § 853(p), if "as a result of any act or omission of the defendant" any property "cannot be located upon the exercise of due diligence," the "court shall order the forfeiture of any other property of the defendant, up to the value of any [such] property."[2] Additionally, Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure provides that "[o]n the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1).

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

5

However, pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), "[e]ach pension plan [covered by ERISA] shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

### B. Discussion

The defendant initially argues that the Government's motion for forfeiture is barred by the anti-alienation provision of ERISA. See Def.'s Opp'n 11, ECF No. 129 (citing 29 U.S.C. § 1056(d)(1)). The Government counters that the anti-alienation provision of ERISA does not apply in this case because it applies only to assets that are held by a pension plan and not yet distributed. See Gov't's Forfeiture Mot. ¶¶ 14-15.

In Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365 (1990), the Supreme Court held that "[Section] 206(d)(1) proscribes the assignment or alienation of pension plan benefits," id. at 371, which included "[t]he [d]istrict [c]ourt impos[ing] a constructive trust on Guidry's pension benefits," id. at 367. In so holding, the Court found that "Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." Id. at 376. As the defendant argues, see Def.'s Opp'n 11, Guidry is relevant to

6

this case. Like Guidry, the defendant in this case "pleaded guilty to embezzling" funds from his employer and is facing arguments that he has "forfeited his right to receive benefits as a result of his criminal misconduct." Guidry, 493 U.S. at 367, 369; see also Gov't's Forfeiture Mot. ¶¶ 2, 10. And like the pension plan at issue in Guidry, the pension plan for the defendant in this case, which is covered by ERISA, see Gov't's Forfeiture Mot. ¶ 14, is protected from assignment and alienation by Section 206(d)(1). See Guidry, 493 U.S. at 371.

The Government attempts to narrow the holding in Guidry, arguing that the Guidry Court only "refused to create a constructive trust for the benefit of a victim-creditor over the defendant's pension." Gov't's Reply 6, ECF No. 131. The Government asserts that, because the Government does not "seek[] a constructive trust on funds held in the [defendant's] Plan" or "contend[] that [the defendant's] pension is subject to forfeiture while the funds remain in the custody of the Plan," Guidry does not apply to this case. Id. However, this narrow interpretation is at odds with the Supreme Court's broad reading of Section 206(d)(1) in Guidry. For example, the Court refused to apply exceptions to Section 206(d)(1) based on Section 409(a) of ERISA (providing that a faithless pension plan fiduciary shall be personally liable for losses and shall be subject to equitable or remedial relief as the court may deem appropriate),

7

see Guidry, 493 U.S. at 373-74, and the remedial provisions of the Labor-Management Reporting and Disclosure Act of 1959 (providing for a private right of action to recover damages or other appropriate relief from union officers), see id. at 374-76. Moreover, the Court warned that lower "courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text . . . especially . . . in the context of an antigarnishment provision." Id. at 376. Section 206(d)(1) "acts, by definition, to hinder the collection of a lawful debt" and "therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties." Id. To accept the Government's argument in this case and carve out an exception to Section 206(d)(1) -- simply because the Government is not asking for a constructive trust or because the Government would be forfeiting the assets "after" they have been disbursed -- appears to undermine the Supreme Court's decision in Guidry.

Indeed, the Court of Appeals for the Second Circuit has never held that Section 206(d)(1) permits what the Government seeks to do in this case. The Government argues that, in United States v. All Funds Distributed To, or o/b/o Weiss, 345 F.3d 49, 57 (2d Cir. 2003), the Court of Appeals for the Second Circuit

8

made it clear that the Government could pursue a defendant's pension once it has been "released to the beneficiary's hands." See Gov't's Forfeiture Mot. ¶ 14; see also Gov't's Reply 6. However, Weiss does not state that it is permissible to forfeit a defendant's monthly pension disbursements -- as the Government seeks to do in this case. See Gov't's Forfeiture Mot. ¶ 16. Moreover, the Weiss court did not reach the issue of whether the Government's forfeiture claim would succeed. Rather, the Weiss court merely granted equitable tolling of the statute of limitations because the Government could not have made a forfeiture claim until after ERISA pension plan funds -- that were used to launder ill-gotten gains -- were distributed to the plan beneficiaries. See 345 F.3d at 57-58.[3]

The defendant cites to authority that stands squarely for the proposition that the Government cannot obtain forfeiture of distributions from a plan covered by ERISA. See Def.'s Opp'n 12. For example, in response to the Government's argument that "the criminal forfeiture statutes are . . . an exception to § 1056(d)[,]" a court in the Eastern District of Virginia held

---

[3] United States v. Jaffe, 417 F.3d 259 (2d Cir. 2005), also does not help the Government. First, the order upheld in Jaffe is distinguishable from the Government's request in this case. The order at issue in Jaffe "d[id] not even specifically direct that . . . payments be from a distribution by the administrator [of an ERISA plan] to appellant[;] . . . it simply order[ed] payments by appellant from whatever source he chooses." 417 F.3d at 267. Moreover, the order at issue in Jaffe was a restitution order, and Jaffe did not address forfeiture orders.

9

that "ERISA's anti-alienation and assignment provision bars the government from seeking criminal forfeiture of a defendant's interest in an ERISA protected . . . plan." United States v. Herrmann, 910 F. Supp. 2d 844, 848-49 (E.D. Va. 2012). Similarly, a court in the Eastern District of Arkansas held that three ERISA-covered retirement accounts were protected by section 1056(d)(1) from forfeiture. See United States v. Jewell, 538 F. Supp. 2d 1087, 1091-92 (E.D. Ark. 2008).

Accordingly, the Government's motion for forfeiture of the defendant's future ERISA plan distributions is **denied**.

## II. Motion for Modification of the Restitution Payment Schedule

### A. Standard of Review

The Mandatory Victims Restitution Act ("MVRA") provides, in pertinent part, upon notice "of any material change in the defendant's economic circumstances that might affect his ability to pay restitution . . . the court may . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k).[4] Where the Government seeks modification of a restitution order, the Government must: provide notification to the court of a material change in the defendant's economic circumstances, provide a certification to the court that the victim has been notified of the changed

---

[4] None of the parties suggest that the fact that the defendant's change in circumstances is due to receiving proceeds from an ERISA-covered pension plan bars an increase in restitution.

10

circumstances, and make a motion to the court to alter the payment schedule. See United States v. Bowles, No. 98-cr-1281, 2003 WL 21396691, at *1 (S.D.N.Y. June 16, 2003) (citing 18 U.S.C. § 3664(k)). In this case, the Government has satisfied each of these requirements by filing the motion for modification of the payment schedule, which provided notification to the court of a material change in the defendant's economic circumstances and certified that the victim had been notified. See Gov't's Modification Mot. 11-13, 17. The remaining question is whether a material change that might warrant a modification has, in fact, occurred.

**B. Discussion**

The Government argues that there has been a material change in the defendant's economic circumstances, namely the pension plan and Social Security distributions. See id. at 11. The defendant argues that a material change has not occurred. See Def.'s Opp'n 16.

The Court of Appeals for the Second Circuit has held that "[t]he release of [a previously inaccessible] account and the consequent availability of . . . funds meet the statutory test for a material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." United States v. Grant, 235 F.3d 95, 101 (2d Cir. 2000) (quoting 18 U.S.C. § 3664(k)). In Grant, an account that was "frozen"

11

became "unfrozen" after the original judgment of conviction and sentence were entered. See id. at 100. That is what has occurred in this case. Before sentencing, in early 2019, the defendant's total monthly income was only $450. See Final Presentence Investigation Report 24, ECF No. 25. At this time, however, the defendant has become eligible for distributions from accounts that were previously not paying distributions. More specifically, the defendant became eligible for monthly disbursements of $19,577 from his ERISA-covered pension plan -- subject to garnishment at 25% -- after the Court entered a Final Order of Garnishment on November 2, 2023. ECF No. 128. The defendant also began receiving $3,444 per month in Social Security benefits in September 2023. See Childs Decl., Ex. D, ECF No. 121-4. This amount became subject to the Treasury Offset Program ("TOP") withholding up to 15% beginning no later than December 2023.[5] See Declaration of Jonathan Savella ("Savella Decl."), Ex. D, ECF No. 130-4. In summary, the defendant's income increased from $450 at the time to sentencing to nearly $18,000 at the present time, even after the garnishment of

---

[5] The TOP "is a federal program, governed by the Debt Collection Act of 1982 and Debt Collection Improvement Act of 1996, that allows the Department of the Treasury . . . to collect delinquent non-tax debts owed to the federal government. Such debts are collected by withholding funds that would otherwise be paid to the debtor by other federal agencies, such as Social Security payments or tax refunds." Adigun v. Internal Revenue Serv., No. 20-cv-3676, 2021 WL 4709751, at *1 (S.D.N.Y. July 27, 2021), report and recommendation adopted, No. 20-cv-3676, 2021 WL 4219664 (S.D.N.Y. Sept. 16, 2021).

pension funds and TOP withholding. See Def.'s Opp'n 9. Accordingly, this availability of funds due to the release of previously inaccessible Social Security and pension accounts is a material change in the defendant's economic circumstances.

The defendant argues that the Court should not grant a modification of the payment schedule in any event because such modification would be unfair. See id. at 19. The MVRA provides that "the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of— the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; projected earnings and other income of the defendant; and any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. 3664(f)(2). It is true that principles of equity should be applied to the requirements on performance of a pronounced sentence. See United States v. Kyles, 601 F.3d 78, 83 (2d Cir. 2010). However, considering all of the relevant circumstances in this case, modification is fair and justified. In this case, the defendant is capable of making increased payments toward restitution. As the Government argues, see Gov't's Reply 8-9, the Government agreed to release $793,892 and the defendant's marital residence -- then valued at $475,000 -- unencumbered to the defendant's wife on June 27, 2019, see ECF No. 58. In view

13

of those assets and the defendant's estimated personal expenses -- including the defendant's income tax liability, see Def.'s Opp'n 9, and a reasonable $6,615 in monthly living expenses, see Savella Decl., Ex. C, ECF No. 130-3 -- an increase in restitution payments is fair and reasonable.

In summary, there has been a material change in the defendant's economic circumstances, and the defendant's amount of restitution payments should be increased accordingly in order to pay the victim. The amount of that increase would be the 75% of net monthly distributions from the defendant's pension that the defendant currently is not paying toward restitution.

CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the Government's motion for forfeiture of property, ECF No. 123, is **denied,** and the Government's motion for modification of the restitution payment schedule, ECF No. 120, is **granted.** The Clerk is directed to close all open motions in this case. The Government should submit a proposed order modifying the restitution payment schedule by **March 1, 2024.** Any objection should be submitted seven days thereafter. Replies can be submitted five days thereafter.

**SO ORDERED.**

Dated:   New York, New York
         **February 16, 2024**

_____
John G. Koeltl
United States District Judge